**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LILLIAN INSEGNA-NIETO, | 2:12-CV-963 JCM (VCF) |
| Plaintiff(s), | |
| v. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., | |
| Defendant(s). | |

**ORDER**

Presently before the court is defendant's, State Farm Mutual Automobile Insurance Company ("defendant"), motion to dismiss. (Doc. # 17). Instead of filing a response in opposition, plaintiff filed a motion to extend time to take discovery pursuant to Federal Rule of Civil Procedure 56(d). (Doc. # 19). State Farm filed a reply to its motion to dismiss. (Doc. # 23).

Also before the court is plaintiff's motion to extend time to take discovery pursuant to Federal Rule of Civil Procedure 56(d). (Doc. #19). State Farm filed an objection to the motion (doc. # 24), and plaintiff filed a reply (doc. # 26).

Also before the court is plaintiff's motion to remand to state court. (Doc. # 22). State Farm filed a response in opposition (doc. # 27), and plaintiff filed a reply (doc. # 28).

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

I.     **Background**

Both the factual background and the procedural background are relevant to the disposition of the instant motions.

   *A.     Factual Background*

In October 2007[1], in Las Vegas, Nevada, Mary Connolly ("Connolly") was driving her 2003 Jeep Wrangler and struck a pedestrian, Victor Nieto. (Doc. #16, Compl. at ¶ 8). Mr. Nieto was walking with his wife, the plaintiff, Lillian Insegna-Nieto. (*Id.*). Mr. Nieto died from his injuries. (*Id.*).

Connolly had an automobile insurance policy issued by State Farm, which was in effect at the time of the accident. (*Id.* at 11). The policy (#0181-394-28D) ("Connolly policy") had liability limits of $100,000 per person. (*Id.* at 11). State Farm also insured plaintiff at the time of the accident. (*Id.* at 12). Plaintiff had an uninsured/underinsured policy (#0066-586-28F) with limits of $25,000 per person. (*Id.* at 12).

This lawsuit implicates several different potential combinations of claims and policies, just the same as in the previous state court lawsuit.

   *B.     Procedural Background*

On March 6, 2008, plaintiff, by and through her attorney, made a policy limit demand with a 30-day time limit against the Connolly policy. (Doc. # 16, Compl. at ¶ 20). On March 28, 2008, State Farm confirmed "settlement of Victor Nieto's injury claim in the amount of $100,000" under the claim on the Connolly policy. (*Id.* at ¶ 21). On March 31, 2008, plaintiff executed a release prepared by State Farm in exchange for $100,000 available under the Connolly policy. (*Id.* at ¶ 22). The release states that plaintiff:

. . .

. . .

---

[1] The amended complaint states that the accident occurred on October 11, 2007. (Doc. # 16, Compl. at ¶¶ 7-8). The release and state court judgment state that the accident occurred on October 17, 2007. The actual date is irrelevant. The court will refer to the accident that occurred in October of 2007.

**James C. Mahan**
**U.S. District Judge**

- 2 -

> "Releases and forever discharges Mary Connolly [sic] her heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable or, who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to persons and property, which have resulted or may in the future develop from an accident which occurred in or about the 17th day of October, 2007 at or near Las Vegas, NV.
>
> . . .
>
> Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident."

(Doc. # 18, Ex. 1).[2] Upon receipt of the signed released, State Farm tendered a $100,000 check to plaintiff under the Connolly policy.

On December 16, 2008, plaintiff made a demand for her independent claims for emotional pain and damages that she suffered personally as a result of the accident. (Doc. # 16, Compl. at ¶ 23). Plaintiff argued that the settlement was only for Mr. Nieto's injuries and did not prevent her from filing an action for her own damages. (*See id.*).

On July 13, 2010, counsel for State Farm confirmed settlement with counsel for plaintiff of the "underinsured policy limits arising out of the wrongful death of Victor Nieto." (*Id.* at 26). After July 13, 2010, State Farm made various compromise or settlement offers on the December 16, 2008, demand. Additionally, State Farm offered to enter into binding arbitration up to the policy limits. (*See id.* at ¶¶ 27-32). State Farm's offers of settlements and offers to arbitrate plaintiff's independent emotional injuries, as well as plaintiff's claim submissions, were handled at various times under the Connolly policy and under the uninsured/underinsured policy. (*See id.*).

. . .

---

[2] The court takes judicial notice of the state court order on summary judgment submitted by defendant. *Intri-Plex Technology, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) ("A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment as long as the facts are not subject to reasonable dispute."); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) ("[U]nder Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record.'").

James C. Mahan
U.S. District Judge

- 3 -

1    According to the complaint, State Farm had already made two settlements with plaintiff. (*See*
2    Doc. # 16, Compl. at ¶ 34). The first was the $100,000 settlement under the Connolly policy for
3    Victor Nieto's injuries. (*See id.*). The second was a $25,000 settlement under the plaintiff's
4    uninsured/underinsured policy for the wrongful death of Victor Nieto. (*See id.*). Plaintiff's
5    complaint alleges that State Farm's offers to settle and/or arbitrate prior to the state court lawsuit was
6    for plaintiff's individual claims, which were independent of the prior settlements. (*See id.*). Plaintiff
7    argues that these offers prove the existence and validity of her independent claims for her injuries
8    and damages.

9    Plaintiff elected not to settle the claims or enter arbitration. (Doc. # 16, Compl. at ¶ 33). On
10   October 9, 2009, plaintiff filed suit in the Eighth Judicial District Court against Connolly. (*Id.* at ¶
11   36). The recovery sought in that action was for the physical and psychological injuries suffered by
12   plaintiff personally under the Connolly policy insured by State Farm. (*See id.* at ¶¶ 36-47). The state
13   court proceeding made it to the summary judgment stage and the state court judge held a hearing on
14   the summary judgment arguments. (*See id.* at ¶¶ 36-47).

15   Connolly, the defendant in the state court action, argued that the release precluded plaintiff
16   from asserting any cause of action whatsoever arising out of the October 17, 2007, accident. Plaintiff
17   argued that the release either settled the death claim for Mr. Nieto, or the emotional injuries of
18   plaintiff, but not both.

19   The state court judge agreed with Connolly. (Doc. # 18, Ex. 1). The judge held that the
20   release was clear and unambiguous and prevented plaintiff from bringing any causes of action
21   against Connolly arising out of the October 17, 2007, accident. (*Id.* at 4 ("Here, the Court has found
22   the Release to be clear and unambiguous, noting that the Release clearly states that Plaintiff has
23   'forever released and discharged' Defendant from 'any and all claims, demands, damages, actions,
24   causes of action or suits of any kind or nature whatsoever' that resulted from the October 17, 2007,
25   accident.").

26   The judge issued his order on June 22, 2010. Further, even though State Farm was not a
27   defendant in the state court action, plaintiff made the same arguments regarding State Farm's alleged
28

**James C. Mahan**
**U.S. District Judge**

- 4 -

1  conduct in her opposition to summary judgment as she does here. (Doc. # 18, Ex. 4, plaintiff's
2  opposition to defendant's motion for summary judgment). Plaintiff argued that State Farm had
3  committed a host of bad faith practices and was dishonest in its dealings with plaintiff.

4  On May 4, 2010, plaintiff filed a nomination of special administrator nominating Rose Cleary
5  ("Cleary") to serve as special administrator of the estate of Victor Nieto. On May 10, 2010, an order
6  was entered appointing Cleary as special administrator of the estate. On August 5, 2010, after having
7  lost the state court action, plaintiff made a demand upon State Farm on behalf of the estate of Victor
8  Nieto for $100,000 under the Connolly policy. Plaintiff then filed this action in state court against
9  State Farm and Connolly. State Farm removed the action to this court.

10  In her amended complaint, plaintiff alleges that "by skillful manipulation, State Farm devised
11  a scheme whereby they settled the death claims of Victor, then turned around and claimed that these
12  settlements were for the claims of Lillian." (Doc. # 16, Compl. at ¶ 47). Plaintiff alleges all the
13  following causes of action against either Connolly or State Farm (or against both): breach of
14  contract, judicial estoppel, tortious breach of contract, violations of the Nevada Unfair Claims
15  Practices Act-686A.310, insurance bad faith, deceptive trade practices, and punitive damages.

16  To summarize, plaintiff alleges that State Farm and Connolly settled claims against her for
17  Mr. Nieto's injuries only. Plaintiff alleges that State Farm via its various offers admitted that
18  plaintiff has her own claims arising from the accident. Plaintiff alleges that State Farm was
19  dishonest in its negotiations, settlement offers, and offers to arbitrate with respect to the claims on
20  the policies of Connolly and plaintiff's own policy for her individual claims. Plaintiff seeks her
21  individual damages, and, for the first time, damages for estate of Victor Nieto.

22  **II.  Legal Standard**

23  The court finds it necessary to address the legal standards for issue preclusion, claim
24  preclusion, and remand.

25  *A.    Claim Preclusion*

26  "The doctrine of res judicata provides that a final judgment on the merits bars further claims
27  by parties or their privies based on the same cause of action." *Tahoe-Sierra Pres. Counsel, Inc. v.*

28

**James C. Mahan**
**U.S. District Judge**

- 5 -

*Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (internal citations and quotations omitted). "A final judgment on the merits of an action precludes the parties or their privies form relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 453 U.S. 394, 398 (1981). "The doctrine of res judicata is meant to protect parties against being harassed by repetitive actions." *Bell v. United States*, no. CV F 02-5077, 2002 WL 1987395, at *4 (E.D. Cal. June 28, 2002).

"It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) (discussing res judicata and collateral estoppel under the Constitution's full faith and credit clause and the parallel federal statute–28 U.S.C. § 1738).

The Nevada Supreme Court has established the following three-part test for determining whether claim preclusion should apply: "(1) the parties or their privies are the same; (2) the final judgment is valid; and (3) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case." *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008); *see also Tahoe-Sierra*, 322 F.3d at 1077 (identifying the same three-part test).

When considering the first factor a court should note that "even when parties are not identical, privity may exist if there is a substantial identity between parties, that is, when there is sufficient commonality of interest." *Id.* at 1082. "Privity–for the purposes of applying the doctrine of res judicata–is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997).

Courts should consider the following four criteria for the third factor: "(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same

. . .

- 6 -

James C. Mahan
U.S. District Judge

evidence is presented in the two actions." *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005).

     *B.*     *Issue Preclusion*

"In contrast to claim preclusion, the doctrine of issue preclusion does not apply to matters which could have been litigated but were not." *Kahn v. Morse & Mowbray*, 117 P.3d 227, 235 (Nev. 2005). "However, issue preclusion may be appropriate, even when the causes of action asserted in the second proceeding are substantially different from those addressed in the initial proceedings, as long as the court in the prior action addressed and decided the same underlying factual issues." *Id.* "Therefore, when determining whether issue preclusion applies to a given case, courts must scrupulously review the record to determine if it actually stands as a bar to relitigation." *Id.*

"Issue preclusion, or collateral estoppel, may be implicated when one or more of the parties to an earlier suit are involved in subsequent litigation on a different claim." *Univ. of Nevada v. Tarkanian*, 879 P.2d 1180, 1191 (Nev. 1994). "The doctrine of issue preclusion prevents relitigation of all issues of fact or law that were actually litigated and necessarily decided in a prior proceeding." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) (internal citations and quotations omitted).

"In both the offensive and defensive use situations the party against whom estoppel [issue preclusion] is asserted has litigated and lost in an earlier action." *Id.* (alteration in original) (internal quotations and citations omitted). "The issue must have been actually decided after a full and fair opportunity for litigation." *Id.*

"Under the Full Faith and Credit Act, federal courts must give state judicial proceedings the same full faith and credit as they have by law or usage in the courts of the State from which they are taken." *Id.* (quoting 28 U.S.C. § 1738); *Migra*, 465 U.S. at 81 ("Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.").

Under Nevada law, "the following factors are necessary for application of issue preclusion: (1) the issue decided in the prior litigation must be identical to the issue presented in the current

action; (2) the initial ruling must have been on the merits and have become final; (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated." *Ruby*, 194 P.3d at 713.

C. Remand

Under 28 U.S.C. § 1441, the removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). One instance in which the district courts of the United States have "original jurisdiction" is where there is complete diversity between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1).

The proper procedure for challenging removal to federal court is a motion to remand. "A federal court must order remand if there is any defect which causes federal jurisdiction to fail, or if there is any defect in the removal procedure." *Knutson v. Allis-Chalmers Corp.*, 358 F.Supp.2d 983, 988 (D. Nev. 2005); 28 U.S.C. § 1447©. The removal statute should be "strictly construe[d] . . . against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.*

III. **Discussion**

This court will begin by analyzing the claims against Connolly and finish by analyzing the claims against State Farm.

A. *Connolly*

Plaintiff has named Connolly as a defendant in this action. This is problematic for two reasons. First, plaintiff has already sued Connolly in state court on the exact same facts presented in this case. Plaintiff filed a lawsuit against Connolly on October 9, 2009, in state court after plaintiff decided she did not want to arbitrate or settle any claims she may have had with State Farm and Connolly. Prior to the state court lawsuit plaintiff signed the release, which released Connolly from any further liability or causes of action stemming from the accident in October of 2007. The

**James C. Mahan**
**U.S. District Judge**

1  state court judge found that the release discharged Connolly from "any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever" that resulted from the October 2007, accident. Any claims against Connolly are clearly barred by issue and claim preclusion.

Second, the claims against Connolly are an attempt to defeat diversity jurisdiction. Plaintiff is domiciled in Nevada. Defendant State Farm is not incorporated in Nevada nor does it have its principal place of business in Nevada. Connolly is domiciled in Nevada. This court would have proper diversity jurisdiction but for the claims against Connolly.

"One exception to the requirement for complete diversity is where the non-diverse defendant has been fraudulently joined." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009). "Joinder is fraudulent 'if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Id.* (quoting *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). "In such a case, the district court may ignore the presence of that defendant for the purpose of establishing diversity." *Id.*

State Farm can properly establish diversity jurisdiction if Connolly was not a defendant. Plaintiff has improperly and fraudulently joined Connolly as a non-diverse defendant. All of plaintiff's claims against Connolly must fail because of issue preclusion and claim preclusion principles. The state court has already held that plaintiff has discharged Connolly from any claims or causes of action related to the accident in October 2007. The state court judge said that the release was clear and unambiguous. In Nevada state courts, this judgment would have preclusive effect on other courts between these parties and this set of facts. This court is likewise barred from relitigating these issues.

Finally, the state court judgment occurred in June 2010, about two years before plaintiff filed her complaint initiating this lawsuit. Plaintiff knew at the time of filing her complaint that she had released Connolly from all claims and causes of action, and that the state court had finally decided this issue. Connolly was fraudulently joined because plaintiff has obviously failed to state a cause of action against Connolly. Remand is not appropriate and Connolly is dismissed from the case.

**James C. Mahan**
**U.S. District Judge**

- 9 -

### B.     State Farm

Plaintiff did not respond to any of the substantive arguments in State Farm's motion to dismiss (such as issue preclusion, claim preclusion, and 12(b)(6) defenses). Instead, plaintiff filed a motion to for additional time to take discovery pursuant to Federal Rule of Civil Procedure 56(d). Failure to at least counter any of the substantive arguments could alone be construed as consenting to all the points in State Farm's motion. *See generally* LR 7-2(d).

Rule 56(d) states that "if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: . . . allow time to obtain affidavits or declarations or to take discovery." Fed.R.Civ.P. 56(d)(2). "The requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; (3) the sought-after facts are essential to oppose summary judgment." *Family Home and Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).

There are two fatal problems for plaintiff. First, plaintiff fails at step one. The affidavit presented by counsel seeks to "confirm the chronology" of events. (*See* doc. # 19 at 14, affidavit). Plaintiff is already in possession of the specific facts she intended to elicit by taking more time for discovery.

The second fatal problem is that she cannot establish the third step. Plaintiff seeks to establish that State Farm agreed to settle or enter into binding arbitration for plaintiff's emotional distress claims/damages after the release was executed but before plaintiff filed her state court lawsuit. State Farm has admitted as much. State Farm readily concedes that it agreed to enter into arbitration and/or settle plaintiff's personal claims, as theoretically distinct from the damages for Mr. Nieto's injuries.

There is nothing left to prove by additional discovery because State Farm has admitted everything plaintiff seeks to prove. State Farm even submitted as exhibits the emails corroborating the settlement and arbitration offers. (*See* doc # 23, Exs. A-E). The settlement negotiations and offers to arbitrate that plaintiff seeks to confirm are irrelevant and do not affect the outcome of the

James C. Mahan
U.S. District Judge

- 10 -

1  suit under governing law. Whether plaintiff had a separate valid claim for her own emotional
2  distress, or any other potentially valid claim against the Connolly policy is irrelevant as plaintiff
3  released any and all claims against Connolly.

4      In any event, plaintiff elected not to settle or arbitrate. Plaintiff elected to file a lawsuit for
5  her personal, emotion claims/damages in state court. Plaintiff was aware of and was in possession
6  of the facts to corroborate all of State Farm's offers to settle or arbitrate prior to filing the state court
7  lawsuit. She filed her lawsuit in October 2009. All State Farm's settlement and arbitration activity
8  happened before the filing of that lawsuit. Therefore, plaintiff's motion to take additional actually
9  fails for two reasons: (1) State Farm has admitted everything plaintiff seeks to discover; and (2)
10 plaintiff was aware of all of these facts prior to filing her state court suit (which overlaps with the
11 claim preclusion and issue preclusion analysis).

12     Further, plaintiff misunderstands the concept of pre-lawsuit settlement offers and concessions
13 to arbitrate. Plaintiff argues that because State Farm offered to settle or arbitrate her personal claims
14 that State Farm is conceding that plaintiff has her own claims that are separate from her deceased
15 husband's injuries.

16     Precisely the opposite is true. A party may offer to settle or arbitrate prior to a lawsuit for
17 a variety of reasons that have nothing to do with the merit of the claims. It is not a concession of
18 guilt or liability. *See generally* Fed. R. Evid. 408. Plaintiff made a strategic decision to file a state
19 court lawsuit and lost. This court must deny plaintiff's motion to take additional time for discovery.

20     Finally, all of plaintiff's claims against State Farm are barred by claim and issue preclusion.
21 As for claim preclusion, Connolly and State Farm are in privity since State Farm insured Connolly.
22 The interests of State Farm and Connolly were aligned. Any claims that plaintiff believed she may
23 have had against State Farm should have been brought in the state court action she filed against
24 Connolly. The state court judgment is valid. The claims in this case are either the same or based
25 on the same claims that should have been brought in the prior state court suit. The two suits arise
26 out of the exact same transactional nucleus of facts and all the same evidence is presented in both
27 this action and the state court action. Plaintiff cannot now come to federal court in an attempt to
28

**James C. Mahan**
**U.S. District Judge**

- 11 -

recover more from State Farm under new legal theories. This is the very purpose of the claim preclusion doctrine.

As for issue preclusion, the state court has already held that the release covered all causes of action against Connolly, which includes any coverage by State Farm, originating from the facts and events from the accident in October 2007. The issues in the state court action and this action are identical. The state court judgment was on the merits and final. Plaintiff was the plaintiff in the prior state court action and had all the same knowledge, facts and ability to raise all causes of action then as she does now. The issues of Connolly's liability and the scope of State Farm's coverage policies were actually litigated.

Plaintiff has no causes of action against Connolly or State Farm because of issue and claim preclusion. Likewise, the relatively recently created estate of Victor Nieto does not have any causes of action against Connolly or State Farm because of issue and claim preclusion.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, DECREED that defendant's motion to dismiss (doc. # 17) be, and the same hereby, is GRANTED and the case is dismissed with prejudice.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that plaintiff's motion to extend time to take discovery, (doc. # 19), be and the same hereby, is DENIED.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that plaintiff's motion to remand (doc. # 22) be, and the same hereby, is DENIED.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the clerk of the court is ordered to close the case and enter judgment.

DATED January 7, 2013.

_____
UNITED STATES DISTRICT JUDGE